UNITED STATES of America,
Plaintiff-Appellee,

v.

Helene Alicia CHAPMAN, Defendant-Appellant.

No. 71–1298
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Dec. 1, 1971.

Rehearing Denied Dec. 21, 1971.

Leon H. Handley, Orlando, Fla., Court-appointed, for defendant-appellant.

John L. Briggs, U. S. Atty., Richard J. Mandell, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant, a woman, was charged as an accessory in the robbery of a savings and loan association and with use of a dangerous weapon in the robbery. Her case was severed from that of the male principal, Schiller. Schiller pleaded guilty to the robbery count, and the dangerous weapon count against him was dismissed.

The first trial of appellant's case, May 19–23, 1970, resulted in a hung jury, and a mistrial was declared. In the second trial, in which appellant was represented by the same counsel, vital prosecution evidence came from Schiller, who admitted that he held up the association office and described appellant as the driver of the getaway car. The

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409.

weight of the evidence was considerably less than overwhelming—in fact, the case for the prosecution hinged on the jury's willingness to accept Schiller as credible. No one else at the scene of the crime could identify appellant or obtained a clear view of the driver. Schiller testified that during the robbery he was so inebriated that he fell against a door in the association's office. There was testimony of other witnesses that Schiller had become acquainted with appellant at a party the night before the robbery. Appellant took the stand and acknowledged that she had been in the car at the scene but claimed she had no knowledge that Schiller was armed or that he planned a robbery. Schiller was a more-than-willing witness who volunteered extraneous and prejudicial matter about appellant.

After approximately three hours of deliberations the jury announced at 6:15 p. m. that it was deadlocked. A motion for mistrial was denied, and the jury was excused until the following morning, at which time, after the "Allen" charge was given, a verdict was reached.

 Appellant is an indigent. After the first trial the court denied her motion that she be furnished, at government expense, with a transcript of the first trial for use at the second trial as a "necessary and valuable part of the defense." Under the particular and very narrow circumstances which we have set out, we conclude that denial of the transcript at the first trial was error. In Roberts v. LaVallee, 389 U.S. 40, 88 S. Ct. 194, 19 L.Ed.2d 41 (1967), the Supreme Court held that an indigent defendant was entitled to a free transcript of a preliminary hearing at which the major state witness had testified, though defendant and his same counsel were present at the hearing and were furnished with a free transcript of the

grand jury testimony of the witness in question, made no use of this transcript at trial and at no time suggested any use to which the preliminary hearing transcript could have been put. Perhaps the closest case is U. S. ex rel. Wilson v. McMann, 408 F.2d 896 (2d Cir. 1969), in which the case turned on the credibility of one government witness and the first trial ended in a hung jury. The court held that defendant was entitled to a free transcript of the prosecution's testimony, even though defendant was represented by the same counsel in both trials and his counsel was permitted to see the key witness' testimony before the grand jury.[1]

 Because of the possibility that it might arise at another trial, we note that it would have been better practice to allow impeaching cross examination of Schiller regarding his having allegedly robbed the same association approximately four months before the robbery in question. He did not admit the prior robbery but witnesses identified him as the culprit on both occasions. If the jury inferred that Schiller was the prior robber, and the *modus operandi* of the first (and very recent) robbery proved to be, as proffered—that no getaway driver was used and that no gun was displayed—the jury could infer that such a mode of conduct was consistent with appellant's version of her presence at the scene of the second holdup and her lack of knowledge that Schiller had a gun. The inferences are somewhat tenuous, but in view of the all-or-nothing importance of Schiller's testimony, and the other circumstances which we have described, we considered that the better practice would be to permit the inquiry.

Reversed and remanded for further proceedings not inconsistent with this opinion.

1. *Compare* U. S. v. Carella, 411 F.2d 729 (2d Cir.) cert. den. sub nom. Erhart v. U. S., 396 U.S. 860, 90 S.Ct. 131, 24 L.Ed. 2d 112 (1969), decided by another panel of the same court on the same day, holding that defendant was not entitled to a free transcript of the first trial that ended in a hung jury where his counsel had "an abundance of impeaching material" including the direct testimony at the first trial of the key government witness.